STATE OF HAWAI`I, Plaintiff-Appellee,
v.
PAUL STUKIN, Defendant-Appellant.
No. 29565.
Intermediate Court of Appeals of Hawaii.
December 11, 2009.
On the briefs:
Matson Kelley, for Defendant-Appellant.
Pamela Lundquist, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding J., FUJISE, and LEONARD, JJ.
Defendant-Appellant Paul Stukin (Stukin) appeals from the Judgment and/or Order and Plea/Judgment, notice of which was entered by the District Court of the Second Circuit (district court)[1] on December 10, 2008, convicting and sentencing him, pursuant to his no-contest plea, of operating a vehicle under the influence of an intoxicant (OVUII) in violation of Hawaii Revised Statutes (HRS) §§ 291E-61(a) (2007)[2]. We affirm.

A.
The OVUII charge[3] against Stukin arose from a traffic stop of Stukin's vehicle by Maui Police Officer Marvin Miles (Officer Miles) shortly after twelve midnight on January 22, 2008.
On May 30, 2008, Stukin filed a motion to suppress, seeking to suppress and preclude from use at trial (1) the results of the blood test to which Stukin submitted following his arrest, on grounds that Stukin was given inaccurate information regarding the consequences of submitting to or refusing to take the test; and (2) the results of all evidence obtained following the traffic stop because Officer Miles lacked reasonable suspicion to stop Stukin's vehicle.
At the July 7, 2008 hearing on the motion to suppress, the sole witness was Officer Miles who testified that while on patrol on the morning in question, he made a left turn from Hinau Street onto Limahana Street. As he was making the left turn, he noticed Stukin's vehicle making a right turn onto Limahana Street from a road about "a block, not more than a hundred feet" from the intersection of Hinau and Limahana streets. Officer Miles testified that about five seconds after making the turn and while traveling at about ten miles per hour, he noticed Stukin's car approaching from behind "pretty fast because the speed limit there was like ten." When Stukin's vehicle got "[n]o more than 20, 20 feet" behind Officer Miles's vehicle, Officer Miles heard a "[p]retty loud" screech. Stukin's vehicle then came to a stop "[l]ike ten feet" away from Officer Miles's vehicle and "almost hit" Officer Miles's vehicle. Officer Miles proceeded north. Stukin followed Officer Miles and then turned into the parking lot of West Maui Bicycle. Officer Miles then activated his emergency lights and initiated a traffic stop of Stukin.
Officer Miles was questioned about why he had stopped Stukin's vehicle, and the following colloquy ensued:
[OFFICER MILES]: Well, the reason for my stop was because of his approaching my vehicle from the rear and the screeching of the tires. I basically was just going to check on the well-being of his driving and to see why he had done that.
. . . .
[DEPUTY PROSECUTING ATTORNEY] Q. Why did you want to check on the well-being of his driving?
A. Well, because normally, I mean, being that he comes from a certified area where he came from, there is a bar located over there and, you know, could possibly be intoxicated.
The other thing I wanted to check on is the reason for. I mean, sometimes people screech their tires because they are, you know, wanting to show off their car or, you know, burn rubber a little bit.
Q. Were you ever at any time concerned about your safety?
A. When he approached the vehicle from the back, yeah, when  he could have hit me.
Following the hearing, the district court granted the motion to suppress with respect to the results of the blood test but denied the motion with respect to the validity of the traffic stop. With regard to the traffic stop, the district court orally explained as follows:
As far as reasonable suspicion goes, the Court does find that there was barely reasonable suspicion here, but the Court does find there was reasonable suspicion. In other words, the officer did note that the defendant's vehicle was traveling at a high rate of speed. It stopped before almost hitting the police officer. There was a loud screeching of tires. Though there was no contact between the two vehicles, he did not hit the officer.
The officer was coming from the stop sign intersection of Hinau and Limahana, turning left onto Limahana from Hinau. And obviously when you make a turn, obviously you are not going to go, as he said, ten miles per hour at the most, maybe less, turning onto Limahana. And the officer was coming  the defendant was coming from the other roadway at a high rate of speed almost hitting the officer, but not hitting the officer. So with regards to reasonable suspicion, the Court does find.
On December 10, 2008, Stukin entered a plea of no contest to the OVUII charge. Although the record on appeal does not indicate that Stukin entered a conditional plea, Stukin's January 6, 2009 notice of appeal states that he entered a conditional plea.
On May 11, 2009, the district court memorialized its oral findings and conclusions as to Stukin's motion to suppress by entering written "Findings of Fact, Conclusions of Law, and Order Denying in Part and Granting in Part [Stukin's] Motion to Suppress Evidence[.]"

B.
On appeal, Stukin argues that the district court erred in denying his motion to suppress evidence because (1) there were no specific and articulable facts that gave rise to a reasonable suspicion that criminal activity was afoot and justified his investigatory stop by Officer Miles; and (2) Plaintiff-Appellee State of Hawai`i (State) failed to prove that any traffic offense that Officer Miles reasonably suspected Stukin of committing had occurred on a "highway[,]" as that term is defined in HRS §§ 291C-1.
Upon carefully reviewing the record and the briefs submitted by the parties, and having duly considered the case law and statutes relevant to the arguments raised by the parties, we conclude that there is no merit to Stukin's arguments.
Officer Miles's testimony that (1) Stukin was driving "pretty fast" in an area where the speed limit was about ten miles per hour; (2) Stukin's vehicle came to a "[p]retty loud[,]" screeching stop about ten feet behind Officer Miles's vehicle; (3) Stukin's vehicle nearly collided with Officer Miles's vehicle; and (4) Stukin's vehicle was traveling from an area where a bar was located was sufficient to support the district court's determination that reasonable suspicion existed to warrant the officer's traffic stop of Stukin. See State v. Bohannon, 102 Hawai`i 228, 237-38, 74 P.3d 980, 989-90 (2003); and State v. Bolosan, 78 Hawai`i 86, 94, 890 P.2d 673, 681 (1995).
Stukin's second argument is a bit confusing. Citing to State v. Figel, 80 Hawai`i 47, 50, 904 P.2d 932, 935 (1995), which relates to a conviction for driving after license suspended or revoked for driving under the influence, Stukin claims that it was incumbent on the State to prove, at the motion-to-suppress hearing, specific and articulable facts that he "was observed on a roadway or highway that is subject to the traffic code or [OVUII] statute." Stukin argues that
[i]n the instant case, [Officer] Miles testified that he stopped [Stukin's] vehicle because he heard a screech and saw [Stukin's] vehicle stopped behind him. However, his suspicion that a traffic violation may have occurred is not objectively reasonable because there are no specific and articulable facts that [Stukin's] vehicle was traveling on a roadway that is subject to the Statewide Traffic Code.
In his motion to suppress, Stukin sought to preclude evidence obtained from "the illegal chemical test and the illegal traffic stop." We are unaware of any requirement that the State must establish, at a motion-to-suppress hearing, the elements of every offense that Stukin was reasonably suspected of committing prior to his traffic stop. In Bolosan, the Hawai`i Supreme Court held that
[a]n investigative stop can be justified based on an objectively reasonable suspicion of any offense, provided that the offense for which reasonable suspicion exists is related to the offense articulated by the officer involved. Offenses are related when the conduct that gave rise to the suspicion that was not objectively reasonable with respect to the articulated offense could, in the eyes of a similarly situated reasonable officer, also have given rise to an objectively reasonable suspicion with regard to the justifiable offense.
78 Hawai`i at 94, 890 P.2d at 681 (footnote omitted). Since an investigatory stop can be justified based on an offense other than the one upon which the stop was subjectively based, it seems illogical to conclude that a police officer is required, at the point of a traffic stop, to have specific and articulable facts of every element of an offense that was the basis for the officer's stop. Moreover, based on Officer Miles's testimony regarding the streets that Stukin was traveling on, we conclude that it was reasonable for Officer Miles to believe that the streets were public, not private, roadways.
Accordingly, we affirm the Judgment and/or Order and Plea/Judgment, notice of entry of which was filed on December 10, 2008.
NOTES
[1] The Honorable Rhonda I.L. Loo presided.
[2] At the time of the alleged offense, HRS §§ 291E-61(a) provided, in relevant part:

Operating a vehicle under the influence of an intoxicant. (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
. . . .
(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.
Pursuant to HRS §§ 291E-1 (2007), the word "[o]perate[,]" as used in HRS chapter 291E, means, in relevant part, "to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway[.]"
The record on appeal indicates that the district court suppressed evidence of the results of a test to determine the presence of alcohol in Stukin's blood following the incident which led to Stukin's arrest for OVUII. Therefore, although the judgment does not reflect the specific subsection of HRS §§ 291E-61 that Stukin was convicted of violating, the record suggests that Stukin was convicted of violating HRS §§ 291E-61(a)(1).
[3] Stukin was also charged with no no-fault insurance in violation of HRS §§ 431:10C-104(a) (2005) and 431:10C-117(2)(3) (2005 & Supp. 2008); however, that charge was dismissed pursuant to a judgment filed on December 10, 2008.